IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| CHARLENE B. REUWER, ) | CIVIL ACTION NO. 9:09-2387-HMH-BM |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **REPORT AND RECOMMENDATION** |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| COMMISSIONER OF SOCIAL ) | |
| SECURITY ADMINISTRATION, ) | |
| ) | |
| Defendant. ) | |
| _____) | |

The Plaintiff filed the complaint in this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the final decision of the Commissioner wherein she was denied disability benefits. This case was referred to the undersigned for a report and recommendation pursuant to Local Rule 73.02(B)(2)(a), (D.S.C.).

Plaintiff applied for Disability Insurance Benefits (DIB) on May 18, 2006, alleging disability as of February 2, 2002 due to depression and anxiety. (R.p. 102 - 104). Plaintiff's claim was denied initially and upon reconsideration. Plaintiff then requested a hearing before an Administrative Law Judge (ALJ), which was held on March 2, 2009. (R.pp. 39-81). The ALJ thereafter denied Plaintiff's claim in a decision issued April 22, 2009. (R.pp. 7-22). The Appeals Council denied Plaintiff's request for a review of the ALJ's decision, thereby making the determination of the ALJ the final decision of the Commissioner. (R.pp. 1-4).



Plaintiff then filed this action in United States District Court. Plaintiff asserts that there is not substantial evidence to support the ALJ's decision, and that the decision should be reversed and remanded for an award of benefits. The Commissioner contends that the decision to deny benefits is supported by substantial evidence, and that Plaintiff was properly found not to be disabled.

### Scope of review

Under 42 U.S.C. § 405(g), the Court's scope of review is limited to (1) whether the Commissioner's decision is supported by substantial evidence, and (2) whether the ultimate conclusions reached by the Commissioner are legally correct under controlling law. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); Richardson v. Califano, 574 F.2d 802, 803 (4th Cir. 1978); Myers v. Califano, 611 F.2d 980, 982-983 (4th Cir. 1980). If the record contains substantial evidence to support the Commissioner's decision, it is the court's duty to affirm the decision. Substantial evidence has been defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. **If there is evidence to justify refusal to direct a verdict were the case before a jury, then there is "substantial evidence."** [emphasis added].

Hays, 907 F.2d at 1456 (citing Laws v. Celebrezze, 368 F.2d 640 (4th Cir. 1966)).

The Court lacks the authority to substitute its own judgment for that of the Commissioner. Laws, 368 F.2d at 642. "[T]he language of [405(g)] precludes a de novo judicial proceeding and requires that the court uphold the [Commissioner's] decision even should the court disagree with such decision as long as it is supported by substantial evidence." Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

2



**Discussion**

A review of the record shows that Plaintiff, who was forty-eight (48) years old when she alleges her disability began, has a high school education with past relevant work experience as a clerical worker, customer service representative, and receiving sales clerk. (R.pp. 102, 123). In order to be considered "disabled" within the meaning of the Social Security Act, Plaintiff must show that she has an impairment or combination of impairments which prevent her from engaging in all substantial gainful activity for which she is qualified by her age, education, experience and functional capacity, and which has lasted or could reasonably be expected to last for at least twelve (12) consecutive months. Further, Plaintiff last met the insured status requirements of the Social Security Act on December 31, 2004, and therefore to be eligible for disability insurance benefits, Plaintiff must demonstrate that she was disabled on or before that date in order to be entitled to DIB. (R.p. 12); see 42 U.S.C. § 423(a) and (c); see also Robert v. Schweiker, 667 F.2d 1143, 1144 (4th Cir. 1981); Matullo v. Bowen, 926 F.2d 240, 244 (3rd Cir. 1990).

After review of the evidence and testimony in the case, the ALJ determined that, although Plaintiff suffered from cervical disk disease, osteoarthritis of the knee, major depression, and a generalized anxiety disorder through the date she was last insured, which were "severe" impairments[1] rendering her unable to preform any of her past relevant work, she nevertheless (through the date last insured) retained the residual functional capacity (RFC) to perform a limited range of light work[2], and was therefore not entitled to disability insurance benefits. (R.pp. 12, 14,

---

[1] An impairment is "severe" if it significantly limits a claimant's physical or mental ability to do basic work activities. See 20 C.F.R. § 404.1521(a); Bowen v. Yuckert, 482 U.S. 137, 140-142 (1987).

[2] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this

3



16, 20-21). Plaintiff asserts that in reaching this decision, the ALJ erred by failing to properly consider the opinions of Plaintiff's treating physician, Dr. Hope Cromer, as well as her consultative physician, Dr. Donald Salmon, and by posing an improper hypothetical to the Vocational Expert which did not accurately depict the extent of Plaintiff's medical limitations. However, after careful review and consideration of the evidence and arguments presented, the undersigned finds and concludes that there is substantial evidence in the record to support the conclusion of the ALJ that Plaintiff was not disabled as that term is defined in the Social Security Act during the relevant time period, and that the decision of the Commissioner should therefore be affirmed.

**I.**

First, the medical record prior to February 2, 2002 (Plaintiff's alleged disability onset date) contains numerous treatment notes relating to degenerative joint disease and various physical ailments affecting the Plaintiff, including left knee arthroscopic surgery in January 1995. These records show that Plaintiff was seen frequently by medical personnel during this period, and none of these medical records reflect any problems with depression or other mental issues. (R.pp. 316-331). Indeed, other than the physical problems for which she was being treated, Plaintiff was generally described as being a "healthy appearing female in no acute distress." (R.pp. 318, 320). During an office visit on January 25, 1999, it was noted that Plaintiff "enjoys walking 3 miles a day and [although] bothered some [by toe pain] would love to be able to run again." (R.p. 319).

The medical record after Plaintiff's alleged disability onset date through the date she was last insured is similarly devoid of evidence of a serious mental impairment. In a treatment note

---

category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567(b) (2005).



dated August 23, 2002 Plaintiff continued to complain of some physical issues, but again made no mention whatsoever of any problems she was having with depression or anxiety. (R.p. 315). The only other medical notes prior to December 8, 2004 are three physician progress notes from June, July and September 2003. There is no mention, or indication of, any problems with depression, anxiety, or any other type of mental problems in any of these medical records, even though Plaintiff now asserts she had a disabling mental impairment at that time. See (R.pp. 312-314).

It was not until December 8, 2004 (approximately three weeks before her eligibility for DIB expired) that Plaintiff presented to Upstate Psychiatry for a psychological evaluation. Plaintiff complained during this visit that she had been depressed "intermittently" since 1992. She reported that she was estranged from her marriage, and had been arrested for shoplifting in October. Plaintiff stated that she had felt "more unhappy than not over the last several years," and that she suffered from "panic attacks at times." Plaintiff also complained of impaired concentration, and of being "anxious all the time." Plaintiff was diagnosed with major depressive order, moderate and recurrent; dysthymic disorder;[3] and generalized anxiety disorder. She was prescribed Zoloft and referred to therapy. (R.pp. 201-204). Plaintiff's eligibility for DIB thereafter expired on December 31, 2004.

Plaintiff continued to be seen at Upstate Psychiatry. On February 3, 2005, Plaintiff reported that her medications had caused a rash, and on April 4, 2005 she stated that she was still having problems with a rash and was having "at least 2 bad days [a week]". (R.pp. 199-200). On June 14, 2005 (some six months after her insured status had expired), Plaintiff reported that she "has

---

[3]Dysthymia is a mild, but chronic, form of depression. www.mayoclinic.com/health/dysthymia [Nov. 16, 2010].



not been that depressed", and then discussed some medical problems family members were having. (R.p. 198). On August 1, 2005, Plaintiff reported that she was "still ok but not great - unsure if she is depressed or not." (R.p. 197). By September 2005, Plaintiff reported that she felt "pretty good overall", with her "mood state good overall . . . ." (R.p. 196). On November 28, 2005, Plaintiff reported that her father had passed away, but she still felt "better overall - mood stable." (R.p. 195).

On February 20, 2006, Plaintiff apparently (handwriting on document is almost illegible) reported that she was feeling more anxious overall, although she was experiencing less anxiety on Zoloft. (R.p. 194). That same month, Plaintiff had an office consultation with a gastroenterologist on January 11, 2006, during which she was found to be alert, oriented and in no acute distress. Significantly, Plaintiff specifically denied suffering from any emotional disorder. (R.pp. 252-253). When Plaintiff returned to Upstate Psychiatry a month later (March 20, 2006), she described her mood as "pretty good" and that she was sleeping "fairly well". Plaintiff did also apparently (again, handwriting is almost illegible) complain of suffering from anxiety "at times". (R.p. 193).

On June 28, 2006, State Agency Psychological Consultant Dr. Kevin King reviewed Plaintiff's medical records and completed a psychiatric review technique form in which he concluded that, through December 31, 2004, Plaintiff's depression had resulted in only mild restrictions of activities of daily living; moderate difficulties in maintaining social functioning as well as in concentration, persistence, or pace; with no episodes of decompensation. (R.p. 216). Dr. King also



did not find that Plaintiff met the criteria for any listing in the Listing of Impairments.[4] See generally (R.pp. 206-218). In a separate Residual Functional Capacity Assessment (mental), Dr. King opined that Plaintiff was moderately limited in her ability to carry out detailed instructions, to maintain attention and concentration for extended periods, to sustain an ordinary routine without special supervision or work in coordination or proximity to others without being distracted, interact appropriately with the general public, and to accept instructions and respond appropriately to criticism from supervisors, but was otherwise not significantly limited. (R.pp. 220-221). He further opined that as of December 31, 2004, Plaintiff had the capacity to understand, remember, and carry out simple instruction, could attend to a simple tasks without special supervision and make simple work related decisions, and avoid normal workplace hazards. He also opined that Plaintiff would work best in a position that has limited contact with the general public and would respond best to positive supervision. (R.pp. 220-222).

Approximately four (4) months later, on October 4, 2006, a counselor at Upstate Psychiatry, Lindsey Mart, completed a medical source statement of ability to do work related activities (mental), in which she opined that Plaintiff was moderately to markedly affected in her ability to understand and remember short, simple instructions; understand and remember detailed instructions; carry out simple, short instructions; and make work related decisions; and was markedly impaired in her ability to carry out short, simple instructions. With respect to Plaintiff's ability to respond appropriately to supervision, coworkers, and work pressures, Mart stated "I do not feel I am

---

[4]In the Listings of Impairments, "[e]ach impairment is defined in terms of several specific medial signs, symptoms, or laboratory test results." Sullivan v. Zebley, 493 U.S. 521, 530 (1990). A claimant is presumed to be disabled if their impairment meets the criteria of an impairment set forth in the Listings. See 20 C.F.R. §§ 416.925, 416.926 (2003).



capable of assessing this area as I have never witnessed or discussed this with [Plaintiff]." (R.pp. 224-225). However, on October 24, 2006, Dr. Cromer completed another medical source statement in which she opined that Plaintiff was markedly restricted in all of the areas previously noted as being either moderate or slight by the counselor, and further opined that Plaintiff was markedly restricted in her ability to respond appropriately to work pressures in a usual work setting and to changes in a routine work setting, while being moderately restricted in her ability to interact appropriately with the public, supervisors, and coworkers. Dr. Cromer did note that it was "somewhat more difficult to adequately assess" these areas. (R.pp. 226-227).

Plaintiff then had a psychological consultative examination performed by Dr. Salmon on November 6, 2006. Plaintiff reported to Dr. Salmon that she had had a "long struggle with depression" that had "worsened in recent years . . . ." Plaintiff complained of having "several panic attacks each month" for the last two years, as well as a "great deal of difficulty focusing and remembering things" due to pain, depression and anxiety. Plaintiff was married and living with her husband, and maintained a good relationship with her mother. The state of Plaintiff's marriage was poor. Plaintiff related that she had worked several jobs in the past, concluding with a job at an MCI call center handling complaints from July 1999 to January 2002. Plaintiff stated that she hated that job, would go home crying, and has not worked since that time. With respect to her emotional state, Plaintiff stated that she had tried to cope on her own but by 2004 realized she needed help and began to see Dr. Cromer. Plaintiff complained that her depression "significantly deepened" in 1992. She stated she also began feeling anxious around 1992, which had significantly worsened in the last two years to the point where she had moderate to severe panic attacks several times a month. She also complained that she cannot "focus well" and constantly forgets what she is doing. Dr. Salmon



8

performed several cognitive tests, following which he opined that Plaintiff performed at a slightly below average level on several cognitive tasks, though her general intelligence was estimated to be in the average range. An MMPI-2 profile was administered, which Dr. Salmon believed to be statistically valid, and which showed that most of the time Plaintiff feels anxious, tense and nervous. Dr. Salmon concluded that Plaintiff would be able to manage funds in her own best interests if awarded benefits, but that she had marked limitations with regard to daily activities, social interaction, concentration, persistence and pace. (R.pp. 230-234). Dr. Salmon completed a medical source statement that same date reflecting these findings. (R.pp. 228-229).

In a letter dated October 22, 2007, Mart stated that she had begun treating the Plaintiff in January 2005, and that Plaintiff was "currently incapable of obtaining or maintaining viable employment . . . ." (R.p. 235). In a letter dated February 10, 2008, Dr. Cromer opined that Plaintiff met the criterial for Listing 12.04 - Affective disorders, and that he believed Plaintiff's disability "began prior to my initially seeing her in December 2004 as she presented as severely ill in her initial evaluation with me and likely would have met criteria for disability well before this initial visit. (R.p. 411).

## II.

After review and consideration of this medical evidence as well as Plaintiff's subjective testimony, the ALJ determined that through the date last insured, Plaintiff retained the residual functional capacity to perform light work with certain postural limitations (related to her physical ailments) and limited to simple, one to two step tasks in a low stress environment with no public contact. (R.p. 16). In reaching these findings, the ALJ further found that Plaintiff had no more than a mild limitation in her activities of daily living, with moderate difficulties in social

9



functioning and with regard to concentration, persistence or pace, with no episodes of decompensation. (R.p. 15). With respect to Listing 12.04, the ALJ determined that Plaintiff did not meet this listing because she did not have at least two "marked" limitations or one "marked" limitation and "repeated" episodes of decompensation, each of extended duration, nor was there any evidence of a medically documented history of chronic depression or anxiety of at least two years duration that had caused more than a minimal limitation of ability to do basic work actives, with other criteria not met. (R.p. 15). Substantial evidence in the medical record supports these findings through at least December 31, 2004, and the undersigned can find no reversible error in the decision of the ALJ that Plaintiff was therefore not eligible for DIB.

While Plaintiff complains that, in reaching his decision, the ALJ did not properly consider and evaluate the opinions of Dr. Cromer and Dr. Salmon, a review of the decision in conjunction with the evidence of record shows that this argument is without merit. First, Dr. Salmon was not a treating physician, having seen the Plaintiff on only one occasion for a consultative examination, and that was in November 2006, almost two years *after* the expiration of Plaintiff's insured status. The ALJ noted, among other problems with this opinion, that Dr. Salmon had provided no opinion evidence regarding Plaintiff's physical functioning during the time period at issue. (R.p. 20). The ALJ gave this opinion little weight, and the undersigned can discern no reversible error in his having done so. Cf. Cox v. Barnhart, 471 F.3d 902, 907 (8th Cir. 2006)[ALJ properly gave physician's opinion less deference where it was rendered three years after the claimant's insured status expired].

As for the opinion of Dr. Cromer, assuming that she was a treating physician, the ALJ also gave her opinion little weight, noting that there was little evidence prior to the date Plaintiff's

10



insured status expired to support Dr. Cromer's opinion of disabling impairment prior to that time. Indeed, Plaintiff had not even reported any problems with depression until December 2004 (the month her insured status expired), when she saw Dr. Cromer for the first time. While Dr. Cromer did assess Plaintiff with depression on that visit, she was otherwise within normal limits, and she received a prescription of Zoloft. Plaintiff's treatment notes both before and following that visit do not reflect the severity of impairment alleged; see (R.pp. 193-200, 252-253, 312-315); with the ALJ also specifically noting that Plaintiff's claims of social isolation and withdrawal was inconsistent both with the fact that she cared for her elderly parents and traveled to Italy and France during the time period at issue. The ALJ further noted that Dr. Cromer's opinion was given well after Plaintiff's insured status expired, and that his own treatment notes for the period after December 2004 going into 2005 did not support the extent of impairment claimed. (R.pp. 193-200), see also, (R.pp. 206-222).

Again, the undersigned can find no reversible error in the ALJ's treatment of Dr. Cromer's opinion in light of the medical evidence of record. See generally Robinson v. Sullivan, 956 F.2d 836, 840 (8th Cir. 1992)[conservative treatment not consistent with allegations of disability]; Craig v. Chater, 76 F.3d 589-590 (4th Cir. 1996)[rejection of treating physician's opinion justified where treating physician's opinion was inconsistent with substantial evidence of record]; Burch v. Apfel, 9 Fed.Appx. 255 (4th Cir. 2001) [ALJ did not err in giving physician's opinion little weight where the physician's opinion was not consistent with her own progress notes.]; see also Hays, 907 F.2d at 1456 [It is the responsibility of the ALJ to weigh the evidence and resolve conflicts in that evidence]. In sum, the ALJ properly discounted both of these retrospective opinions, as they were not supported by the medical evidence from the relevant time period, and they failed to provide



any adequate or proper basis for accrediting their findings. Potter v. Secretary of Health and Human Servs., 905 F.2d 1346, 1348-1349 (10th Cir. 1990)[While physicians may provide retrospective diagnoses, evidence of actual disability during the insured period is required.] Plaintiff's arguments with respect to the ALJ's treatment of these opinions are therefore without merit.

Finally, Plaintiff's argument that the decision should be reversed because the ALJ provided an improper hypothetical to the Vocational Expert which did not include all of the impairments suffered by the Plaintiff on or before December 31, 2004 is also without merit. The record shows that the ALJ proffered a hypothetical which reflected the residual functional capacity found by the ALJ to exist; (R.pp. 74-75); and in response to this hypothetical, the VE testified as to several jobs Plaintiff could perform with those limitations. While Plaintiff may disagree with the findings of the ALJ, the undersigned has previously concluded that these findings are supported by substantial evidence in the record as that term is defined in the applicable case law. Hence, the hypothetical given by the ALJ to the Vocational Expert was proper, and the undersigned finds no grounds in the ALJ's treatment of the Vocational Expert testimony for reverse of the final decision of the Commissioner. Lee v. Sullivan, 945 F.2d 687, 692 (4th Cir. 1991))[ALJ not required to include limitations or restrictions in his hypothetical question that he finds not to be supported by the record]; See Martinez v. Heckler, 807 F.2d 771, 773 (9th Cir. 1986); cf. Wood v. Barnhart, No. 05-432, 2006 WL 2583097 at * 11 (D.Del. Sept. 7, 2006) [By restricting plaintiff to jobs with simple instructions, the ALJ adequately accounted for plaintiff's moderate limitation in maintaining concentration, persistence or pace]; Smith-Felder v. Commissioner, 103 F.Supp.2d 1011, 1014 (E.D.Mich. June 26, 2000) [hypothetical question including work involving only a mild amount of stress and only "simple one, two, or three step operations" properly comports with findings of ALJ



as to plaintiff's moderate limitations in concentration, social functioning, and tolerance of stress].

## **Conclusion**

Substantial evidence is defined as " ... evidence which a reasoning mind would accept as sufficient to support a particular conclusion." Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984). As previously noted, if the record contains substantial evidence to support the decision (i.e., if there is sufficient evidence to justify a refusal to direct a verdict were the case before a jury), this Court is required to uphold the decision, even should the Court disagree with the decision. Blalock, 483 F.2d at 775.

Under this standard, the record contains substantial evidence to support the conclusion of the Commissioner that the Plaintiff was not disabled within the meaning of the Social Security Act during the relevant time period. Therefore, it is recommended that the decision of the Commissioner be **affirmed**.

The parties are referred to the notice page attached hereto.

_____
Bristow Marchant
United States Magistrate Judge

November 22, 2010
Charleston, South Carolina



**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> Post Office Box 835
> Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

